# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

In Re:

XUEHAI LI,

      Debtor.

Civil Action Nos. 22-3232 (RK)
22-4321 (RK)

**OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on two appeals filed by Xuehai Li ("Appellant", "Debtor", or "Li"). Li first appeals the Bankruptcy Court's December 8, 2021 Letter Decision ("Letter Decision", Bankr. ECF No. 501) denying Li's motion to vacate several orders of the Court and deem the arbitration agreement rejected (Dist. Ct. Case No. 22-3232). The second appeal contests the Bankruptcy Court's findings on the record that Zhang had not violated the automatic stay (Dist. Ct. Case No. 22-4321). The Trustee opposes the first appeal and has not filed any submissions as to the second appeal. Yun Zhang ("Appellee" or "Zhang"), a creditor and ex-spouse of the Debtor, filed opposition in both appeals. The Court has carefully considered the parties' submissions, and for the following reasons, **AFFIRMS** the Bankruptcy Court's decisions.

## I.     BACKGROUND

This case has a protracted and complex history, involving parallel proceedings in New Jersey Superior Court, the Bankruptcy Court, and the courts of the People's Republic of China

("China") spanning more than eight (8) years. This history will be briefly recounted for context, with greater detail provided to facts relevant to the present appeals.[1]

After seven years of marriage to Zhang, Li filed for divorce on March 4, 2015. Four years of contentious litigation ensued in the New Jersey Superior Court, Family Part. These proceedings culminated in a Final Judgment of Divorce ("FJOD"), entered by the Superior Court on August 20, 2019. The FJOD incorporated an Arbitration Agreement and a "Chinese Compliance Agreement."

Pursuant to the Arbitration Agreement in the FJOD, the parties agreed to submit all outstanding marital issues to binding arbitration before the Honorable Bradley Ferencz, J.S.C. (ret.) ("The Arbitrator"). The enumerated issues included "[a]ll matters of equitable distribution, [] allocation of debt, alimony, child support, counsel fees, arbitration fees and related cost[s]." (App. Div. Op. at 2.) These issues could "not [be] remove[d]" from the arbitration, although additional matters could be added. (*Id.*) Nor could the Arbitrator's decision "be challenged, vacated, amended or changed except in limited circumstances[,] and there [would] be no appeal except for the reasons set forth [under New Jersey law]." (*Id.*)

Under the terms of the Chinese Compliance Agreement, the parties reiterated their understanding that the Arbitrator's "decisions [were] final" and that "[t]o the extent the arbitration decision requires enforcement . . . in China, [the parties] would not object to the use of the arbitration decision." (*Id.* at 3.) The Compliance Agreement further stated that the parties intended "that the Chinese Courts provide the arbitration decision with full faith and credit." (*Id.*)

---

[1] A more comprehensive history of the case can be found within the Bankruptcy Court's Letter Decision and the Appellate Division's recent decision affirming the denial of Li's motion to vacate the arbitration in the parallel state case, *Li v. Zhang*, No. A-2447-21 (N.J. Super. App. Div. June 26, 2023) ("App. Div. Op.").

Li was represented by the law firm Stark & Stark throughout the matrimonial action and through the drafting and execution of the FJOD, the Arbitration Agreement, and the Chinese Compliance Agreement. Prior to the commencement of the arbitration, and shortly after the arbitrator ordered Li to liquidate an investment asset worth $536,000 "to provide funding for the arbitration for both parties," Valerie Wong, Esq., moved to substitute herself as plaintiff's counsel. (*Id.* at 4.) This was denied due to the arbitrator's view that substitution at that juncture would unnecessarily delay the proceedings. (*Id.*)

On March 13, 2020, three days before the arbitration trial was scheduled to begin, Li filed for Chapter 11 bankruptcy. The Bankruptcy Court described the petition as "bare bones" and bereft of "the majority of Li's schedules and other documents." (Letter Decision at 5.) Zhang filed opposition to Li's bankruptcy petition, arguing that the sole purpose of the bankruptcy was to delay the arbitration. The Bankruptcy Court permitted Li an extension to file missing schedules, and the arbitration was stayed "pending the conclusion of . . . plaintiff's bankruptcy proceedings." (App. Div. Op. at 5.)

"Complete schedules were filed on April 15, 2020." (Letter Decision at 5.) Li's Schedule G listed five (5) executory contracts and unexpired leases. (*Id.*) This list did not include the Arbitration Agreement or a contract with Zhang. No amended schedule was filed. (*Id.*)

On June 16, 2020, the Bankruptcy Court entered an order granting relief from the automatic stay so that the arbitration and the state court proceedings could "continue to resolution." (Bankr. ECF No. 68.) Ms. Wong was approved as special counsel to the Debtor "for the limited purpose and to the extent permitted by [the] Arbitrator." (*Id.*) On July 16, 2020, Andrea Dobin, Esq., was appointed as Chapter 11 Trustee. (Bankr. ECF No. 105.) Shortly thereafter, the Bankruptcy Court terminated Ms. Wong's retention as special counsel upon finding that she had "exceeded the scope

of the authority provided to her by the Retention Order and exceeded the Debtor's authority to participate in the Matrimonial Case." (Bankr. ECF No. 148.) The Order explained the effect of the appointment of the Chapter 11 Trustee as follows:

> The appointment of a Chapter 11 Trustee . . . changed the extent of the authority that the Debtor has in the Matrimonial Case. To wit, the right to equitable distribution is property of the Bankruptcy Estate subject to the exclusive control of the Chapter 11 Trustee . . . The Trustee has exclusive authority to pursue property of the estate, including equitable distribution claims. As a result of the appointment of the Chapter 11 Trustee, the Debtor no longer needs the services of any counsel paid by the Estate to represent him generally in the matrimonial case; this does not preclude the Debtor from retaining counsel, using non-estate funds or assets, to represent his interests specific to the Debtor (i.e. custody, visitation, maintenance, etc.).

(*Id.*)

The case was converted to Chapter 7 on October 22, 2020. Thereafter, the Trustee challenged Zhang's proof of claim for equitable distribution, and the parties agreed to resolve the objection via arbitration. The consent order specified that

> [T]he Trustee and Yun Zhang will proceed with final, non-appealable and binding arbitration . . . for a determination as to Yun Zhang's equitable distribution claim. The parties shall enter into an arbitration agreement, separate and apart from the arbitration agreement entered into as part of the matrimonial proceedings . . . that shall mirror in all material respects the Matrimonial Arbitration Agreement . . . . The arbitration will not address issues of custody or domestic support obligations of any nature.

(Bankr. ECF No. 199.) This arbitration (the "post-petition arbitration"), as with the prior arbitration (the "pre-petition arbitration"), would be presided over by the Honorable Bradley Ferencz (ret.). (*Id.*) The arbitration would also be determinative of Zhang's right to equitable distribution both in the bankruptcy proceeding and in the matrimonial proceeding. (*Id.*)

Separately, the Bankruptcy Court issued an order advising the Debtor that he "is entitled to seek the retention of counsel to represent his interests in the Arbitration and/or State Court

Family Law Case" and directed that "the Arbitration is not to proceed for at least thirty (30) days following the entry of this Order to allow the Debtor time to obtain counsel to represent his interests in any family law matter, including the Arbitration, the State Court Family Law Case, or any matrimonial issues that may arise in this Bankruptcy Case." (Bankr. ECF No. 222.)

The arbitration began in January of 2021 and, after six (6) full days of trial, concluded on March 15 of that year.[2] (App. Div. Op. at 9; Letter Decision at 20.) On March 15, 2021, the final day of the arbitration trial, Li filed a notice of motion seeking to vacate four (4) orders issued by the Bankruptcy Court "which allowed the continuation of the arbitration proceeding adjudicating the claim of Yun Zhang for equitable distribution pursuant to the prepetition arbitration agreement and declaring that the arbitration agreement has been rejected because not timely assumed." (Bankr. ECF No. 334.) The brief in support of the motion argued that numerous violations of Li's procedural due process rights had occurred which rendered the arbitration process "irreparably flawed." (Bankr. ECF No. 334-3 at 4.) While this motion was pending before the Bankruptcy Court, Li also moved in state court to vacate the arbitration, arguing similar alleged defects in due process. (App. Div. Op. at 10.)

On December 8, 2021, the Bankruptcy Court denied Li's motion and allowed the arbitration to continue. (Bankr. ECF No. 501.) The basis for the Decision, which forms one of the two subjects of this appeal, will be discussed in greater detail herein. Li's parallel motion in state court was also denied and subsequently affirmed by the Appellate Division on June 26, 2023.

---

[2] By the start of the arbitration trial, Li had retained Beixiao Liu, Esq., who had begun representing Li in the state court matrimonial matter. (*Id.*) Mr. Liu also filed a notice of substitution as the Debtor's attorney of record on January 22, 2021. (Bankr. ECF No. 270.) Timothy P. Neumann, Esq., filed a notice of appearance as the Debtor's bankruptcy counsel on February 16, 2021. (Bankr. ECF No. 306.)

On June 25, 2021, the Arbitrator issued a sixty-six-page written decision determining Zhang's entitlement to $2,708,531 in "total equitable distribution," as well as additional awards regarding alimony, child support, and fees. (*Id.* at 9–10.) Notably, the Arbitrator found that Li, a "self-made multi-millionaire businessman," had "repeatedly and purposely attempted to mislead the [t]ribunal about the ownership and value of the marital property." (App. Op. at 9.) Moreover, "the arbitrator suggested that plaintiff 'abused the process' by unnecessarily 'prolonging the proceedings,' unjustifiably 'increasing the costs,' 'submitting false evidence,' 'creating self-serving fraudulent documents,' and providing 'perjured testimony.'" (*Id.* at 22.)[3]

Shortly thereafter, on July 1, 2021, Zhang filed a motion seeking relief from the automatic stay so that she could prosecute her equitable distribution award in China, where Li holds considerable assets. (Bankr. ECF No. 391; *see also* Hrg. Tr. at 166:19–20, ECF No. 6 (noting that "most" if not "all" of Li's assets are in China).) In seeking stay relief, counsel for Zhang certified that immediate relief was necessary because the statute of limitations for pursuing equitable

---

[3] Even the most cursory review of the Bankruptcy Court docket reveals a pattern of the Debtor's recalcitrant, disingenuous, and obstructive behavior. On December 11, 2020, an order issued by the Honorable Michael B. Kaplan, U.S.B.J., found the Debtor in contempt of the Court's order granting the Trustee's motion to compel certain documents from the Debtor. (Bankr. ECF No. 237.) On June 24, 2021, the Honorable Christine M. Gravelle, U.S.B.J., ordered per diem sanctions against the Debtor under the Contempt Order. (Bankr. ECF No. 389.) During a hearing on August 19, 2021, Judge Gravelle inquired of Li's progress in producing the required documents, to which Li's then-counsel informed the Court that Li had refused to sign the required certifications or provide the necessary information. (Hrg. Tr., Bankr. ECF No. 425 at 14:2–23.) On June 14, 2022, the Bankruptcy Court entered a judgment for sum certain against the Debtor for $6,000,000, finding that "the Debtor has (i) transferred property of the Estate after the date on which the bankruptcy petition was filed; (ii) concealed and/or failed to keep records from which the Trustee would be able to determine the Debtor's financial condition; (iii) withheld from the Trustee records pertaining to the Debtor's financial affairs; (iv) failed to explain the deficiency of assets to meet his liabilities; and (v) refused to obey a lawful order of this Court." (Bankr. ECF No. 585.) On April 12, 2023, the Court entered another order "granting default judgment barring the debtor's discharge," noting that it had stricken Defendant's answers for contempt of the Court's order compelling compliance with discovery requests. (Bankr. ECF No. 663.)

Of course, none of these orders are the subject of the instant appeals and the Court will not consider them for purposes of the legal analysis that follows. However, the Court would be remiss to exclude these facts in recounting the history of this case given how flagrantly and serially the Debtor has violated — and continues to violate — the Bankruptcy Court's orders.

distribution in China would run on August 18, 2021. (Bankr. ECF Nos. 391 at ¶ 20; 401-1 at ¶ 38 (citing applicable Chinese law); 401-2 (same).) The stay relief motion was opposed by Li and Giantsea New Energy Technology Co., Ltd. ("Giantsea"), a creditor.[4]

After hearing argument, the Bankruptcy Court granted Zhang's motion for stay relief. The Order recorded an award of $2,975,554.00 and further modified the automatic stay "to permit Yun Zhang to record the equitable distribution claim . . . in [China] in order to preserve her rights to enforce her equitable distribution claim in that country." (Bankr. ECF No. 416 at 3.) Pursuant to the Order, Zhang would be permitted to prosecute her equitable distribution claim . . . up to the point of entry of judgment." (*Id.* at 4.) However, Zhang was prohibited from "tak[ing] steps to collect on any judgment obtained in [China] . . . absent further order of [the Bankruptcy] Court." (*Id.*)

Zhang ultimately filed her civil complaint in China on September 26, 2021, after the statute of limitations period had run. (ECF No. 6 at 46.) Li did not object to Zhang's suit on that basis, however, and instead litigated the issue on the merits. Notably, it appears that neither Li nor the Chinese courts gave full faith and credit to the judgments entered against Li in the New Jersey Superior Court and the Bankruptcy Court. (*See generally* ECF No. 6.) Following several months of proceedings, the Chinese court found against Zhang.

In February 2022, following his win, Li filed a motion with the Bankruptcy Court arguing that Zhang's actions — in initiating separate proceedings in China rather than simply seeking to enforce the equitable distribution award — violated the limited scope of the stay relief Order. (*See* Hrg. Tr. at 19:4–7, ECF No. 6.) As a remedy, Li sought either expungement or subordination of

---

[4] Li lists approximately a one-third ownership interest in Giantsea. The remainder is owned by Li's father. *See* Letter Decision at 2.

Zhang's claim. (*Id.*) The Bankruptcy Court held a hearing on August 15, 2022 (ECF No. 6) and declined to find a violation of the stay. (*Id.* at 168:2–3.) The Court further noted that "even if [the stay] were violated here . . . the request that her claim be expunged is a [d]raconian result." (*Id.* at 168:6–7.) Li has since appealed both findings, which form the subject of the second appeal in this case.

## II.   <u>LEGAL STANDARD</u>

A district court has jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). The standard of review for Bankruptcy Court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (Bankr. D.N.J. 2005). A bankruptcy court's factual findings are reviewed for clear error. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir. 1995) (citing *Resyn Corp. v. United States*, 851 F.2d 660, 664 (3d Cir. 1988)). A factual finding is considered clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citations omitted). Legal conclusions, in contrast, are subject to plenary review. *Zolfo*, 50 F.3d at 257.

Where an issue presents mixed questions of law and fact, the Court applies the relevant standard to each component of the issue. *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995). "[T]he standard of review for a mixed question all depends [] on whether answering it entails primarily legal or factual work." *U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). Where the mixed question "require[s] courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard . . . appellate courts should typically review a decision *de novo*." *Id.* In contrast, where the mixed question "immerse[s] courts in case-specific

factual issues — compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address . . . multifarious, fleeting, special, narrow facts that utterly resist generalization' . . . appellate courts should usually review a decision with deference." *Id.*

## III.   **DISCUSSION**

### A.   VALIDITY OF THE ARBITRATION AGREEMENTS[5]

   i.     Whether the Pre-Petition Arbitration Agreement was an Executory Contract.

Li argues that the pre-petition Arbitration Agreement incorporated into the FJOD was an executory contract which was rejected by operation of law because it was not timely assumed by the Debtor or the Trustee. According to Li, rejection of the arbitration agreement "ended the obligation of the estate to perform the arbitration agreement and limited the relief available to Yun Zhang to filing a proof of claim." (ECF No. 6 at 26.) Li also argues that the post-petition arbitration should be invalidated due to several due process failures, notably the failure of the Court to obtain Li's consent (*id.* at 32), and the unclear and circumscribed role in which Li was permitted to participate in the arbitration (*id.* at 36). Review of the first issue — whether an arbitration agreement incorporated into a divorce judgment is an executory contract — is *de novo*.

The Bankruptcy Code does not provide a formal definition of an executory contract. Most circuits, however, define an executory contract as a contract where the obligations under both sides are "so far underperformed that the failure of either to complete performance would constitute material breach" of the contract. Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973); *accord In re Bennett Enters.*, 628 B.R. 481, 487 (Bankr. D.N.J. 2021) (citations omitted). The Third Circuit has opined that "[e]xecutory contracts in bankruptcy are best recognized as a combination of assets and liabilities to the bankruptcy estate; the

---

[5] Unless otherwise noted, the docket numbers in this section refer to Case Number 22-3232.

9

performance the nonbankrupt owes the debtor constitutes an asset, and the performance the debtor owes the nonbankrupt is a liability." *Enter. Energy Corp. v. United States (In re Columbia Gas Sys.)*, 50 F.3d 233, 238 (3d Cir. 1995).

Debtors, when filing an initial bankruptcy petition, are instructed under Schedule G to "[l]ist all . . . executory contracts and unexpired leases." Schedule G explains, "[e]xecutory contracts are contracts between you and someone else in which neither you nor the other party has performed all of the requirements by the time you file for bankruptcy." The form lists several examples of what an executory contract might be, such as internet and cable contracts; vehicle leases; supplier or service contracts; timeshare contracts; rent-to-own contracts; and employment contracts.[6]

Pursuant to 11 U.S.C. § 365, either the debtor or the trustee (if the trustee has stepped into the debtor's shoes) may assume or reject the executory contract. Assumption occurs "when the package of assets and liabilities is a net asset to the estate," and operates as renewed acceptance of the terms of the contract. *In re Columbia Gas Sys.*, 50 F.3d at 238. If the contract is considered a net liability, the debtor or trustee will reject the contract. With few exceptions, rejection of an executory contract "constitutes breach of such contract." 11 U.S.C. § 365(g). The counterparty to the breached contract "thus has a claim against the estate for damages resulting from the debtor's nonperformance." *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019). In Chapter 7 cases, if the trustee does not assume or reject the contract within 60 days, then the contract is deemed rejected. 11 U.S.C. § 365(d)(1).

Appellant argues that the Arbitration Agreement, incorporated into the Final Judgment of Divorce, is an executory contract that was rejected by operation of law when the trustee did not

---

[6] Official Form 108G, https://www.uscourts.gov/sites/default/files/instructions_individuals.pdf.

assume the FJOD after 60 days. The Bankruptcy Court rejected this proposition for several reasons. At the outset, the Court recognized that while the Arbitration Agreement may have initially constituted an executory contract, "it became non-executory when it was made an element of the Divorce Judgment." (Bankr. ECF No. 557 at 7–8.) The fact that the Arbitration Agreement was an integral component of the divorce judgment "makes it impossible to reject the agreement absent a successful appeal of the judgment." (*Id.* at 10.) Thus, if Li's position were correct, "every divorced person who files for a chapter 7 bankruptcy and whose trustee fails to accept the agreement included in the judgment of divorce would no longer be bound by it." (*Id.*) This would "eviscerate[] the role of the family court." (*Id.*) Moreover, such a requirement would impose an undue burden on the trustee, who would be forced "to make a determination as to each and every marital settlement agreement which comes before her, regardless of the agreement's effect on the bankruptcy estate." (*Id.*)

The Court agrees. The Third Circuit instructs that "[a]t the outset, we should ask whether this [] agreement would be considered a contract had there been no bankruptcy." *In re Columbia Gas Sys.*, 50 F.3d at 238. "[I]f the [] agreement should be considered a contract under relevant nonbankruptcy law, it will be a contract in bankruptcy 'unless some federal interest requires a different result . . . .'" *Id.* (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). Under this framework, court orders have been treated as executory contracts in certain limited instances, often related to settlement or consent agreements. *See, e.g., In re Columbia Gas Sys.*, 50 F.3d at 238 (treating some class action settlement agreements as executory contracts); *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 n.10 (1975) (treating consent decrees as contracts in some instances); *but see Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 Bankr. 185 (D. Mass.), *aff'd without op.*, 860 F.2d 1072 (1st Cir. 1988) ("Courts agree that the phrase 'executory

contract' cannot be applied to a judicial order") (citing *In re Jolly*, 574 F.2d 349 (6th Cir.), *cert. denied*, 439 U.S. 929 (1978)).

In *Columbia Gas*, the district court approved a class settlement agreement which arose out of an initial breach of contract. 50 F.3d at 235. The settlement agreement created both a remedy to the initial contracts and further executed a supplemental contract that imposed additional and ongoing obligations. *Id.* at 236. The Third Circuit observed that "[a]lthough settlement agreements may be judicially approved, they share many characteristics of voluntary contracts and are construed according to traditional precepts of contract construction." *Id.* at 238. In holding that the settlement agreement was an executory contract under 11 U.S.C. § 365, the Third Circuit reasoned that "[i]n a nonbankruptcy context, we have treated a settlement agreement as a contract . . . [w]e see nothing special in this bankruptcy that counsels a different approach." *Id.* at 238.

While Appellant repeatedly references *Columbia Gas*, he cites to no authority stating that divorce judgments are typically treated as contracts in nonbankruptcy contexts, and the Bankruptcy Court gave several compelling reasons to treat them differently. (*See* Bankr. ECF No. 557 at 9–11.) Unlike the settlement agreement in *Columbia Gas*, a divorce judgment does not simply entail a court's approval of parties' stipulated contractual terms. As the bankruptcy Court observed, "[t]here is significantly more" to the process of dissolving a marriage than "the reduction of the parties' obligation to a claim amount for a breach of contract." (Bankr. ECF No. 557 at 9.) This makes the reduction of a divorce judgment to an executory contract and potential claim a far more complicated endeavor than in those cases where court orders have been deemed executory contracts.

In the context of this case, the Arbitration Agreement cannot be considered a mere contract outside the bankruptcy because its terms had been expressly incorporated into the FJOD.[7] (Bankr. ECF No. 391-3.) The FJOD "order[s] and adjudge[s] that the aforesaid Arbitration Agreement . . . shall be and is hereby incorporated and made part of this Judgment <u>as if set forth at full length herein</u>." (*Id.* (emphasis added).) The FJOD also mandates that "all issues surrounding the marriage . . . are reserved and to be determined by way of Arbitration or further agreement of the parties." (*Id.*) As the parties have clearly not agreed to all the issues surrounding the marriage, the FJOD therefore orders that the parties therefore resolve them through arbitration. Unlike with a typical contract, to undo the arbitration requirement the parties would have to seek leave of the Superior Court or appeal the judgment.

Appellant argues that had the Bankruptcy Code wanted to treat divorce judgments differently, it would have expressly done so. (ECF No. 6 at 19.) Yet the Bankruptcy Code *does* treat matters regarding the dissolution of marriage differently. For example, the automatic stay does not apply to the commencement or continuation of an action to establish or modify a domestic support obligation or dissolve a marriage (with the exception of "the division of property that is property of the estate"). 11 U.S.C. § 362(b)(2)(A)(ii) & (iv). The discharge injunction does not apply to domestic support obligations. 11 U.S.C. § 523(a)(5). Furthermore, domestic support debts are given priority for payment. 11 U.S.C. § 507(a)(1). Therefore, a more cautious and deferential treatment of state divorce judgments under § 365 is in accord with the statutory construction of the Bankruptcy Code.

---

[7] Appellant cites the Court to *Janvey v. Alguire*, an unpublished case arising from the Northern District of Texas, which found that an arbitration agreement constituted an executory contract for purposes of 11 U.S.C. § 365. No. 9-724, 2014 U.S. Dist. LEXIS 193394, at *112–13 (N.D. Tex. July 30, 2014). That case, however, addressed standalone arbitration agreements, and did not discuss arbitration agreements that had been incorporated into a judicial order.

As a final point, the Court is mindful that Appellant's position, which essentially seeks to collaterally challenge a state court judgment in federal court, undermines foundational principles of federalism in our court system. Bankruptcy is not a tool for litigants to obtain "review [of] state court property determinations as some sort of super-appellate court." *In re DeLauro*, 207 B.R. 412, 417 (Bankr. D.N.J. 1997) (citations omitted). As one bankruptcy court noted:

> We are increasingly troubled by the trend of parties to leave Domestic Relations Court with an agreement that settles property and alimony matters, only to immediately walk down the street to the federal courthouse and attempt to relitigate those issues. Such actions call into question the good faith of the parties and their counsel and raise thorny issues of comity and finality of judgments, to say noting of attempting to make the Bankruptcy Court into some type of appellate divorce court.

*Id.* (quoting *In re McGraw*, 176 Bankr. 149, 152 (Bankr. S.D. Ohio 1994)).

If any case so warranted that admonition, it is here. The record glaringly shows that Li has used the federal bankruptcy courts and the courts of China to undo the results of many years of contentious proceedings in New Jersey Family Court. As the Bankruptcy Court noted, "it's pretty clear that this bankruptcy was filed as an extension of the divorce proceeding and essentially to gain some type of advantage . . . through this court." (Hrg. Tr., Dist. No. 22-4321, ECF No. 6 at 156:15–16.) Indeed, Li initiated the instant bankruptcy proceedings mere days before the pre-petition arbitration was scheduled to begin by filing an incomplete, "bare bones" petition. (Letter Decision at 5.) Li has been consistently sanctioned and reprimanded for his refusal "to comply with any of his obligations under the [Bankruptcy] Code." (Dist. No. 22-4321 ECF No. 6 at 156:15–16.)

Even with respect to the instant motion that is the subject of this appeal, it is worth re-emphasizing that his own petition did not list the Arbitration Agreement or the FJOD as an executory contract under his Schedule G even after seeking leave of the Bankruptcy Court for

additional time file more complete schedules. (Letter Decision at 5.) Li's argument that the Arbitration Agreement should be rejected as an executory contract was advanced beyond the eleventh hour: "after Li has been in bankruptcy for over a year, after Li participated in two months of arbitration, and after the Trustee and Zhang expended significant time and resources engaging in the arbitration process." (Letter Decision at 23.) As the Bankruptcy Court aptly posed it, "If Debtor believed he was free of the obligation to perform under the Arbitration Agreement, why did he waste everyone's time (and money) by participating? . . . Instead he relies on advancing an after the fact legal theory relying on a strict interpretation of the Code." (Bankr. ECF No. 557 at 13.) Such a contrivance cannot be countenanced.

The Court therefore affirms the Bankruptcy Court's conclusion that the pre-petition Arbitration Agreement was not an executory contract. Given this finding, the Court need not consider Appellant's arguments in Points III through V of its Brief regarding rejection and ratification as they are premised on the proposition that the Agreement was an executory contract. (ECF No. 6 at 22–32.) Point VII (mislabeled Point VI) of Appellant's brief also appears to be moot as it is framed as contingent on his position that the pre-petition arbitration agreement was a rejected executory contract. (*See id.* at 37.) To the extent that it is not, Appellant's argument improperly seeks the Court to revisit issues of due process in the state court proceedings that have been extensively litigated and resolved in state court. *See* App. Op. at 23–29. The Court will not permit Appellant to attempt, once again, to seek federal review of a state court judgment simply because the outcome was not in his favor.

ii.    Alleged Due Process Violations in the Post-Petition Arbitration

Appellant's final Point seeks to challenge the validity of the post-petition arbitration proceedings on the grounds that they required his consent. (ECF No. 6 at 33.) Li further argues

that he was improperly "disenfranchised" by Bankruptcy Court orders that "relegat[ed] him to the status of mere witness" in post-petition arbitration. (*Id.* at 34.)

As an initial matter, Appellant concedes that he had agreed to participate in the arbitration of the equitable distribution matter before he filed for bankruptcy. (*Id.* at 32) His counter to that, as before, is that that the Arbitration Agreement — as an executory contract — had been rejected by operation of law and he should therefore "not be bound by the result." (*Id.* at 33.) Because the Court has already found against Li on this aspect, this argument may be rejected on this basis alone.

That is not the only ground, however, that render's Appellant's claim unavailing. As discussed *supra*, the post-petition Order requiring arbitration of the equitable distribution claim was issued on November 4, 2020, after the case had been converted to Chapter 7 bankruptcy. (*See* Bankr. ECF No. 199.) At this point, the Trustee had already stepped into the shoes of the Debtor on the issue of equitable distribution, which no party disputes had become property of the bankruptcy estate. Even prior to conversion to Chapter 7, the Bankruptcy Court had ordered that the appointment of the Chapter 11 trustee granted "[t]he Trustee [] exclusive authority to pursue property of the estate, including equitable distribution claims." (Bankr. ECF No. 148.) The Court finds Appellant's unsupported challenge to this exclusive designation of authority unfounded under both the Bankruptcy Code and the case law. *See* 11 U.S.C. §§ 323(a) (""The trustee in a case under this title is the representative of the estate."); 704(a)(1) ("The trustee shall collect and reduce to money the property of the estate for which such trustee serves . . ."); *see also Hopkins v. McDonnell*, No. 6-683, 2006 U.S. Dist. LEXIS 54232, at *7–10 (D.N.J. Aug. 4, 2006) (finding no abuse of discretion where the Bankruptcy Court found that the Trustee had exclusive authority to assert or settle claims regarding equitable distribution); *In re Harber*, 553 B.R. 522, 527 (Bankr.

W.D. Pa. 2016) ("Under the Bankruptcy Code, the Trustee has exclusive authority to administer and dispose of property within the bankruptcy estate.").

After the Trustee's appointment, the Trustee challenged Zhang's equitable distribution claim pursuant to its duties articulated by the Bankruptcy Court and the Code. The Bankruptcy Court's November 4, 2020 Order memorialized that the Trustee and Zhang "[had] agreed to procedures for determining and setting equitable distribution on the terms set forth herein," namely through arbitration. (*Id.*) On Appeal, both the Trustee and Zhang affirm that they indeed agreed to this, and that the Order functioned as the arbitration agreement. (*See* Appellee Br., ECF No. 15 at 7; Trustee Br., ECF No. 17 at 8.) Appellant cites to no authority suggesting that an additional separate agreement to arbitrate was required prior to entry of the Order. Given that the Trustee had already been entrusted with the exclusive authority to resolve the equitable distribution claim, the Debtor's additional agreement was unnecessary.

Even so, the Bankruptcy Court subsequently issued an order on the docket notifying the Debtor that he "is entitled to seek the retention of counsel to represent his interests in the Arbitration and/or State Court Family Law Case" and staying the commencement of the Arbitration "for at least thirty (30) days . . . to allow the Debtor time to obtain counsel to represent his interests in any family law matter, including the Arbitration, the State Court Family Law Case, or any matrimonial issues that may arise in this Bankruptcy Case." (Bankr. ECF No. 222.) Li's contentions of procedural deficiencies are all the more baffling given the existence of this Order.

## B. WHETHER ZHANG VIOLATED THE STAY RELIEF ORDER[8]

The Court next considers Li's appeal of the Bankruptcy Court's finding that Zhang had not violated the stay relief order and that expungement or subordination was not warranted.

---

[8] ECF docket numbers in this section refer to Case Number 22-04321.

Appellant's primary argument is that Zhang exceeded the limited stay relief by initiating entirely new proceedings in China rather than simply seeking to enforce the equitable distribution judgment. (ECF No. 5 at 12.) According to Appellant, the Bankruptcy Court "misconstrued the very clear language of its own order" in finding that Zhang had not violated the stay. (*Id.* at 14.) Secondly, Appellant argues that Zhang's belated filing in China demonstrates that "the entire basis for her motion for stay relief was a falsehood." (*Id.* at 9.)

Our Circuit applies an abuse of discretion standard to a bankruptcy court's interpretation of its own order. *In re Shenango Grp., Inc.*, 501 F.3d 338, 346 (3d Cir. 2007). "An abuse of discretion exists where the Bankruptcy Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 148 (3d Cir. 2010). "To show an abuse of discretion, appellants must show the . . . court's action was arbitrary, fanciful or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). "This deferential standard should not apply, of course, if the issue being reviewed presents only a question of law." *In re Shenango Grp., Inc.*, 501 F.3d at 346 (citing *In re Nat'l Gypsum Co.*, 219 F.3d 478 (5th Cir. 2000)). However, aside from pure questions of law, the reviewing court must "accord[] great weight to the Bankruptcy Court's construction of an order with which it is familiar by virtue of its direct involvement in the proceedings." *Id.*

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *In re McGowan*, 2011 Bankr. LEXIS 2292, at *5 (Bankr. D.N.J. June 15, 2011) (quotations and citations omitted). Relief from the automatic stay may be granted "for cause." 11 U.S.C. § 362(d)(1). Since the Bankruptcy Code does not define

"cause," courts must consider whether to grant stay relief "based on the totality of the circumstances of each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). Here, because the Bankruptcy Court's decision to grant stay relief has not been appealed, the only issue is whether Zhang violated the terms of the Order.

The Bankruptcy Court Order at issue provided, in pertinent part:

1. The automatic Stay is modified to permit Yun Zhang to record the equitable distribution claim . . . in the Peoples Republic of China in order to preserve her rights to enforce her equitable distribution claim in that country. This Court retains exclusive jurisdiction at all times to make final determinations of all issues within the jurisdiction conferred pursuant to 28 U.S.C. 1334; and

2. Yun Zhang is permitted to prosecute her equitable distribution claim under the Equitable Distribution Order up to the point of entry of judgment. Yung Zhang may not take steps to collect on any judgment obtained in [China], including, but not limited to levying and/or liquidation of the Debtor's assets, absent further order of this Court.

3. [] The Equitable Distribution Order is not a final order for purposes of appeal and is not a final determination of the claim of Yun Zhang for equitable distribution and is entered solely for the purpose of enabling Yun Zhang to perfect her claims in [China], and is subject to modification consistent with final determinations of the issues in the Motion to Vacate and subsequent motions or appeal.

4. This Order may not be utilized in any legal proceeding in [China] absent further order of this Court. Specifically, this Order may not be used to challenge Yun Zhang's rights as to enforcement of the Equitable Distribution Order in [China]. Any party in violation of the paragraph will be subject to sanctions determined by this Court.

(Bankr. ECF No. 416 at 3–4.)

The central dispute between Appellant and the Bankruptcy Court is whether Zhang's initiation of a "new proceeding" in China — as opposed to simply seeking to enforce the equitable distribution judgment in China — exceeded the grant of the stay relief order. (*See* ECF No. 6 at 165:9.) Li relied predominantly on the first paragraph of the Order for the proposition that the

Order imposed "words of limitation," proscribing Zhang from any action beyond seeking enforcement of the Order in the Chinese courts. (*Id.* at 163:8–9.) The Bankruptcy Court disagreed with Li's interpretation of the Order, particularly as applied to the practicalities of enforcing an American order in Chinese courts.

> [W]hen I went back and looked at the order, it seems to me it's paragraph 2 that we're talking about which says that Yun Zhang may not take steps to collect on any judgment obtained in the People's Republic of China including but not limited to levying and/or liquidation of the debtor's assets absent further order of this Court. And I'm not sure that she did . . . .
>
> [Counsel for Zhang] is saying that she filed these orders in China and China doesn't recognize the orders . . . . And if [Zhang] gets [to China] and she's trying, she shows the [Chinese Court] she's trying to preserve her right to equitable distribution and the Chinese Courts say we don't care what any court in the United States says, isn't she still . . . entitled to try to preserve her right to equitable distribution? That was the whole point . . . of this order."

(ECF No. 6 at 156:18 to 157:1; 164:12–18.)

The Bankruptcy Court also found that the record was too muddled — particularly surrounding the proceedings and relevant Chinese law — to find a clear violation of the stay. The Bankruptcy Court explained,

> When I look at this further . . . I don't know what the Chinese Court, what really happened there. I mean maybe [Zhang] went there and here we think you can file this [equitable distribution order] to protect you[r] right. You just like put a placemark in the Court and don't go any further. Maybe she wasn't allowed to go any further. I don't, it just, it hasn't been developed for me to find a clear violation of the stay.

(*Id.* at 167:21 to 168:3.)

The record before the Court on appeal reflects the murky and barebones record of the Chinese proceedings. Zhang's Complaint indicates that Zhang sued for "asset dispute after divorce," relying in part on the proceedings in the Bankruptcy Court and the state court in asserting

her claim. (Appellant's Ex. A, ECF No. 6 at 46–47.) The Complaint also recognized, however, that "regulations on approval of overseas divorce proceedings by Chinese citizens, asset settlement, living expense division, and children's foster rights judged in overseas courts cannot be approved or executed in our country." (*Id.* at 47.) Nevertheless, Zhang's "Supplementary Evidence List" provided the Bankruptcy Court's Equitable Distribution Order to substantiate her claim. (Appellant's Ex. C, ECF No. 6 at 52–56.) The only other evidence before the Court includes transcripts of oral argument — which do not prove particularly helpful for either party — and the brief of Li's Chinese counsel, which argues in part that foreign judgments cannot be directly enforced in China. (Appellant's Ex. E, ECF No. 6 at 65.) The fact that both parties' Chinese counsel recognized the proposition that the equitable distribution claim could not be directly enforced in China vastly diminishes Li's claim that it would be sufficient for Zhang to simply record or enforce the Equitable Distribution Order to achieve the relief that the Bankruptcy Court envisioned in fashioning the modification order.

The ambiguity of the Chinese proceedings undermines Li's position, who as the moving party bore the burden of demonstrating that Zhang had violated the provisions of the stay relief order. *See Zack v. Transp. All. Bank (In re Zack)*, 623 B.R. 168, 170 (W. Dist. Pa. 2020) (finding that the Debtor failed to meet its burden of proof to show a violation of the automatic stay); *Witkoski v. Knight*, 523 B.R. 291, 297 (B.A.P. 1st Cir. 2014). It was up to Li to provide a sufficient record of the Chinese proceedings and law to enable the Bankruptcy Court to find a clear violation of the stay. Instead, the hearing transcript is replete with illustrations of how convoluted the Bankruptcy Court found the record to be, and the appellate record substantiates this insufficiency. Li did not corroborate, beyond mere conclusory assertions, that Zhang's actions in initiating new proceedings were wholly excessive in the context of enforcing the Bankruptcy Court's equitable

distribution order in China.[9] The Bankruptcy Court's reluctance in finding Zhang's actions improper were entirely reasonable, particularly given all parties' consensus that the Chinese courts would not give full faith and credit to orders issued by United States bankruptcy courts.

Upon review of the Chinese proceedings, the Court also disagrees with Appellant that the Bankruptcy Court "misconstrued the very clear language of its own order." (ECF No. 5 at 14.) The Order did not simply provide that Zhang could only record the Equitable Distribution Order and nothing more. It permitted Zhang "to prosecute her equitable distribution claim under the Equitable Distribution Order up to the point of entry of judgment." (Bankr. ECF No. 416 at 4.) She did not "take any steps to collect on any judgment obtained" in China (*id.*), particularly as judgment was ultimately entered against her and in favor of Li. While the Order states that it "may not be utilized in any legal proceeding in [China] absent further order of [the Bankruptcy Court]," the second sentence clarifies that this provision seeks to prevent any party from contesting Zhang's right to seek enforcement of the Equitable Distribution Order in China. (*Id.*) Therefore, Zhang's actions in China do not exhibit such a facial violation as to render the Bankruptcy Court's analysis "arbitrary, fanciful or clearly unreasonable." *Stecyk*, 295 F.3d at 412.

Because the Court affirms the Bankruptcy Court's finding that no stay violation occurred, the Court need not consider whether the Court's refusal to expunge or subordinate Zhang's claim as a remedy for the alleged stay violation was improper.

---

[9] Li's argument that all Zhang had to do was record her equitable distribution order might have carried greater force had the record shown that Li had any intention of abiding by the terms of the Chinese Compliance Agreement, wherein he had agreed to give the results of the arbitration full faith and credit in the courts of China. Of course, that did not happen, to Li's great benefit.

IV.    **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's orders are AFFIRMED, and the appeals under Case Numbers 22-3232 and 22-4321 are dismissed. The Court will issue an Order consistent with this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 17, 2023